# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANTHONY DAPKUS ) | |
| ) | Civil Case No. 15 CV 6395 |
| Plaintiff, ) | |
| ) | Hon. Virginia A. Kendall, |
| v. ) | Judge Presiding |
| ) | |
| CHIPOTLE MEXICAN GRILL, INC., ) | Magistrate Judge Daniel Martin |
| ) | |
| Defendant. ) | |

### DEFENDANT CHIPOTLE MEXICAN GRILL, INC.'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE PURSUANT TO LOCAL RULE 56.1(a)(3)

NOW COMES Defendant CHIPOTLE MEXICAN GRILL, INC., ("Chipotle"), by and through its attorneys, Jacqueline R. Guesno and Allison J. Dodd of Messner Reeves LLP, and David J. Stein of Masuda, Funai, Eifert & Mitchell, Ltd., and pursuant to Local Rule 56(a)(3) of the Northern District of Illinois, hereby submits its Statement of Material Facts, as follows:

A. <u>Description of the Parties, Venue and Jurisdiction</u>

1. Plaintiff Anthony Dapkus ("Dapkus") is an individual and resident of the State of Illinois who resides at 4358 South Lincoln Park Avenue. (**Ex. A**, Deposition of Plaintiff Anthony Dapkus, 5:13-15.)

2. Defendant Chipotle is a Delaware corporation with its principal place of business in the state of Colorado that operates a chain of "fast casual" restaurants that specialize in Mexican fare, and further operates a restaurant located at 1132 South Clinton Street, Chicago, Illinois 60607 ("South Loop"). (**Ex. B**, Declaration of Stephanie Vazquez, ¶ 3.)

3. This Court has jurisdiction to adjudicate Dapkus' claim against Chipotle pursuant to 28 U.S.C. § 1331 because Dapkus has brought his claim pursuant to federal law, specifically

42 U.S.C. § 1981. [Doc. 8, ¶ 2.]

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to Dapkus' claim against Chipotle occurred within the judicial district of the Northern District of Illinois, Eastern Division. [Doc. 8, ¶ 3.]

B. Introduction to Chipotle

5. Chipotle is an "at-will" employer, and Chipotle, or the employee, is free to terminate the employment relationship without prior notice at any time, without any procedure or formality, for any reason or no reason at all. (Vazquez Decl., ¶ 5; **Ex. C**, 2014 Crew Handbook, p. 4.)

6. Every Chipotle restaurant is operated by a set of crew members, who are responsible for preparing and cooking ingredients, assembling customer food orders, cleaning and maintaining the restaurant, delivering great customer service and other similar tasks. (Vazquez Decl., ¶ 6; Dapkus Dep., 96:14-97:2; **Ex. D**, Crew Member Job Description.)

7. The crew members are assisted and managed by four levels of management (listed in ascending order of responsibility): Kitchen Manager, Service Manager, Apprentice Manager and General Manager. (Vazquez Decl., ¶ 7.)

8. The Kitchen Manager is responsible for the back of the house, which includes inventory and prep. (Vazquez Decl., ¶ 10; **Ex. E**, Kitchen Manager Job Description.) During Dapkus' employment Joseph Medina was South Loop's Kitchen Manager. (Dapkus Dep., 92:20-94:5.)

9. The Service Manager is responsible for the front of the house, which includes customer service and the dining room. (Vazquez Decl., ¶ 11; **Ex. F**, Service Manager Job

Description.) During Dapkus' employment, Leticia Nava and Andre Valez were South Loop's Service Managers (Dapkus Dep., 92:8-10.)

10. An Apprentice is the assistant General Manager. (Vazquez Decl., ¶ 12; **Ex. G**, Apprentice Job Description.) During Dapkus' employment, Jesus Gonzales was the Apprentice at South Loop. (Dapkus Dep., 74:24-75:5; 91:6-7.)

11. General Managers are responsible for the overall operation of the restaurant, including hiring and firing. (Vazquez Decl., ¶ 13; **Ex. H**, General Manager Job Description.) At the time of Dapkus' termination, Cindy Gutierrez was South Loop's General Manager. (Dapkus Dep., 87:14-18.)

12. The General Manager is authorized to and responsible for making all employment and operational decisions in the restaurant—he or she is responsible for making all hiring and firing decisions. (Vazquez Decl., ¶ 13; **Ex. H**, General Manager Job Description; **Ex. I**, Deposition of Cindy Gutierrez, 34:1-14.)

13. Above General Managers, Chipotle employs managers who are responsible for the field operations of one or more restaurants – Restaurateurs. (Vazquez Decl., ¶ 14; **Ex. J**, Restaurateur 2-4 Job Description.) Restaurateurs directly report to a Team Leader who is responsible for multiple restaurants in a geographic region. (Vazquez Decl., ¶ 15.) At the time of Dapkus' termination, Patricia Alvarez was his Restaurateur and Stephanie Vazquez was his Team Leader. (Dapkus Dep., 93:14-16; 93:22-94:4.)

C. Chipotle's Policies and Procedures

14. Chipotle maintains and regularly updates an Equal Employment Opportunity (EEO) policy, Code of Conduct, and Anti-Discrimination, Harassment, and Sexual Harassment policy, which Chipotle refers to collectively as its "Respectful Workplace Policy." (Vazquez

Decl., ¶ 16; Gutierrez Dep., 43:13-21.) Every new hire has access to this handbook and a copy is kept in the office of each Chipotle location. (Vazquez Decl., ¶ 16; **Ex. C**, 2014 Crew Handbook, p. 7; **Ex. K**, Deposition of Tony Simmons, 31:8-32:10.) In addition, Chipotle posts a Respectful Workplace Poster on the employee bulletin board at each location. (Vazquez Decl. ¶ 19; **Ex. L**, Respectful Workplace Poster.)

15. To encourage employees to report any inappropriate behavior, including discriminatory and/or harassing behavior, Chipotle provides two avenues for reporting anonymously. (Vazquez Decl., ¶ 18; Gutierrez Dep., 44:16-45:23.) The two ways to report such behavior anonymously is by submitting a complaint with the Respectful Workplace Hotline or Chipotle Confidential. (Vazquez Decl., ¶ 19; **Ex. C**, 2014 Crew Handbook, p. 7.) An employee can also report any inappropriate behavior to their manager or any field level manager. (Vazquez Decl., ¶ 17.)

16. The Crew Handbook outlines Chipotle policies and procedures, the relevant provisions read as follows:

      a. "Basic Expectations: The following are examples of some of our expectations, although the list is not all-inclusive. Failure to meet our expectations (the following list below or any others) or violation of Chipotle policies may result in disciplinary action, up to and including termination.… Treat fellow employees and customers with respect." (**Ex. C**, at p. 9.)

      b. "Policy Regarding Employee Treatment of Customers and Suppliers: Chipotle employees are prohibited from discriminating against or harassing customers and suppliers based on race, national origin, gender, age, marital status, sexual orientation, gender identity, disability, veteran status, genetic

information, or any other prohibited basis, both in the course of work-related activities and at Company-sponsored training and functions. Management employees who witness or receive reports of discriminatory or harassing behavior are required to take appropriate action." (*Id.* at 41.)

17. Dapkus was aware of and understood Chipotle's Respectful Workplace Policy and was trained on it by watching instructive videos. (Dapkus Dep., 103:21-104:2.) Dapkus was also aware of and understood Chipotle's policy regarding employee treatment of customers. (Dapkus Dep., 96:14-97:8; 99:21-22; 106:17-107:6; **Ex. D**, Crew Member Job Description.)

D. Dapkus' History and Employment with Chipotle

18. Dapkus is an African-American male. (**Ex. M**, Plaintiff's Amended Answers and Objections to Defendant's First Set of Interrogatories, Rog. No. 1.)

19. Gutierrez interviewed and hired Dapkus for the position of crew member at South Loop. (Dapkus Dep., 81:15-19; 83:13-24; 95:18-96:5.) Gutierrez was the only person involved in hiring Dapkus. (*Id.* at 83:13-22.)

20. Dapkus started working at South Loop on October 28, 2013, approximately one week before the location opened to the public on November 6, 2013. (**Ex. N**, Dapkus Aloha Records; Dapkus Dep., 84:2-18, 85:1-3.) Before the location opened to the public, Dapkus participated in a six-day training and orientation lead by various managerial level employees who worked at South Loop or were part of Chipotle's New Restaurant Opening team. (*Id.* at 85:4-87:13.)

21. On February 28, 2014, Dapkus quit his job at Chipotle because he got into an altercation with a transgender customer, which ultimately resulted in him telling the customer to "go find yourself." (Dapkus Dep., 141:24-147:16; **Ex. N**, Dapkus Aloha Records; Vega Dep.,

84:16-23; Enriquez Dep., 22:8-12.) Dapkus told Gutierrez that he said "go find yourself" to a customer. (Dapkus Dep., 159:5-13; Gutierrez Dep., 48:16-21.) Dapkus testified that it is demeaning to tell a transgender person to "go find yourself" and he should not have responded to the customer in that way and, instead, should have reported the customer's behavior to a manager. (Dapkus Dep., 149:16-150:23; 152:17-21.) Dapkus testified that there is no circumstance where it is acceptable to be disrespectful to a customer. (*Id.* at 151:17-19.) Dapkus testified that being disrespectful to a customer could subject an employee to termination. (*Id.* at 151:20-24.)

E. Dapkus' Baseless Harassment Allegations

22. South Loop was a diverse restaurant. (**Ex. O**, Deposition of Katherine Vega, 112:19-113:5; Gutierrez Dep., 34:15-19; **Ex. P**, Defendant's Supplemental Responses to Plaintiff's First Set of Requests for Production, Resp. 31.)

23. Dantrall Swayzer, Brandon Copeland, Jimeese Walker, Essie Lindsay, Tony Simmons, and David Finney are some of the African American employees who worked at South Loop with Dapkus. (Vazquez Decl, ¶ 24; Vega Dep., 86:4-86:5; 117:11-15; Dapkus Dep., 241:7.) Out of the 23 employees at South Loop, 10 were African American. (**Ex. P**, Defendant's Supplemental Responses to Plaintiff's First Set of Requests for Production, Resp. 31.)

24. Dapkus testified that every manager and some of the crew members, including African Americans and Latinos, harassed him because he was African American. (Dapkus Dep., 110:9-24; 161:5-24.) However, in his responses to written discovery, Dapkus only testifies that Gutierrez and Medina were the supervisors that engaged in offensive conduct. (**Ex. M**, Plaintiff's Amended Answers and Objections to Defendant's First Set of Interrogatories, Rogs. No. 1, 3, 4, 5, 8, 18.)

25. Dapkus also testified that Medina threatened him with a knife on January 8, 2014, and that he was upset for the rest of his shift. (Dapkus Dep., 180-23:182:3, 263:16-19; **Ex. Q**, 1/5/14 Weekly Schedule.) The incident took place at the grill, which is directly behind the line where customers are served their food. (Dapkus Dep. 187:12-189:4; **Ex. R**, Photo of South Loop.) No one witnessed this incident and he continued to work with Medina for more than a week before reporting the incident to Alvarez. (Dapkus Dep., 177:23-178:2, 179:2-180:11, 180:23-181:10, 188:19-189:4; 189:18-191:18.)

26. Dapkus and Medina did not work together on January 8, 2014. (Vazquez Decl., ¶¶ 21, 22; **Ex. N** Dapkus Aloha Records; **Ex. Q**, 1/5/14 Weekly Schedule.) On January 8, 2014, Dapkus worked from 7:20 am until 3:02 pm and Medina worked from 3:09 pm until 12:30 am. *Id.* On January 8, 2014, Dapkus was scheduled to work from 7:15 am until 2:15 pm and Medina was scheduled to work from 3:30 pm until 11:15 pm. (**Ex. Q**, 1/5/14 Weekly Schedule.)

27. Dapkus testified that Medina treated everyone the same at South Loop and was rude equally to everyone. (Dapkus Dep., 176:18-177:2; 233:13-24; Vega Dep., 114:5-12; **Ex. S**, Deposition of Enrique Enriquez., 53:18-54:7.)

28. No one witnessed any racial harassment of Dapkus by another non-African American employee. (Dapkus Dep., 203:13-21, 285:3-12; Vega Dep., 90:9-14, 103:24-104:7; **Ex. T**, Deposition of Jimeese Walker, 39:11-41:12; Gutierrez Dep., 60:22-61:24.)

29. No one witnessed African American employees being treated less favorably than other non-African American employees at South Loop. (Vega Dep., 118:12-16, 128:15-21; Simmons Dep., 35:15-23; Gutierrez Dep., 60:22-61:24; Walker Dep., 26:10-12.)

30. Alvarez and other managers would compliment Dapkus on his prep skills and Alvarez and Gonzales told him they wanted him to be a manager. (Dapkus Dep., 74:2-23; 98:4-12; 129:2-15.)

31. The use of the terms nigger or nigga at South Loop was used in a familial manner and was used by African Americans and Latinos. (Dapkus Dep., 111:14-19; Vega Dep., 94:3-97:6; Walker Dep., 37:19-38:8, 39:4-10.) In fact, Dapkus would use the terms nigger or nigga at work. (Vega Dep., 98:10-18; Enriquez Dep., 26:23-27:13; 33:8-13.)

32. No one witnessed the use of the terms nigger or nigga in a negative way. (Vega Dep., 129:22-130:15; Walker Dep., 37:19-38:15, 39:4-10; Gutierrez Dep., 60:22-61:24, 62:8-15; Enriquez Dep., 26:23-29:22.)

33. No one, other than Dapkus, testified that they heard Gutierrez use the terms nigger or nigga. (Vega Dep., 73:21-74:14, 115:17-116:4; Enriquez Dep., 53:6-17; Gutierrez Dep., 60:22-61:24; Walker Dep., 50:9-51:1; **Ex. U**, Deposition of Stephanie Vazquez, 33:11-20.)

34. Dapkus can only provide one example of Gutierrez using "nigger" and, according to Dapkus, she said it to another employee about another employee. (Dapkus Dep., 116:18-120:10.)

35. No one witnessed the use of the terms gorilla or monkey in a negative way. (Vega Dep., 133:6-135:12; Walker Dep., 52:8-13; Gutierrez Dep., 60:13-61:24, 62:24-7; Enriquez Dep., 25:11-24; Vazquez Dep., 42:16-23; **Ex. V**, Deposition of Patricia Alvarez, 50:20-51:3.)

36. No one witnessed any employee saying "do you want a banana?" to an African American employee. (Gutierrez Dep., 62:1-4; Enriquez Dep., 59:13-24.)

37. Dapkus and other African Americans that worked at South Loop testified that the use of the terms nigger or nigga are used as slang. (Dapkus Dep., 112:3-12; 112:16-21; 113:19-

115:5, 115:22-116:17; Walker Dep., 38:8-17.) Dapkus himself has used those terms in a joking manner. (Dapkus Dep., 112:3-12; 112:16-21; 113:19-115:5, 115:22-116:17.)

38. No one witnessed Dapkus being physically threatened by any employee at South Loop. (Vega Dep., 114:13-15; Enriquez Dep., 25:6-10, 54:11-55:4; Gutierrez Dep., 62:5-23.)

39. Dapkus testified that he voiced his concerns about being harassed or physically threatened to Alvarez, but does not think she understood exactly what he was telling her. (Dapkus Dep., 126:20-128:18; 132:20-133:11.)

40. Alvarez denies that Dapkus reported any concerns about harassment or physical threats to her. (Alvarez Dep., 46:11-15.)

41. Dapkus complained to other employees about being picked on but did not complain about being harassed or physically threatened by any employee at South Loop. (Vega Dep., 114:13-15; Dapkus Dep., 162:1-13, 183:10-12, 200:20-201:16, 210:23-211:23, 218:8-220:2, 221:11-16, 233:1-234:12; Walker Dep., 41:13-42:17; Gutierrez Dep., 47:6-9, 60:8-12, 62:5-23, 74:4-19.)

42. Dapkus used derogatory language towards women and gay people. (Gutierrez Dep., 78:1-18; Dapkus Dep., 141:24-147:16, 149:16-150:23; 152:17-21.) Dapkus referred to women as "bitches" and "hoes." (Enriquez Dep., 61:23-64:12.) Dapkus told a coworker, referring to a group of gay customers, that he "used to chase those people and beat them up." (Enriquez Dep., 60:12-62:19.)

                Respectfully submitted,

By:    /s/ *Jacqueline Guesno*
         Jacqueline R. Guesno (CO. Bar No. 34753)
         Allison Dodd (CO. Bar No. 43835)*
         Messner Reeves LLP
         1430 Wynkoop St., Suite 300

Denver, Colorado 80202
P: (303) 623-1800
F: (303) 623-0552
jguesno@messner.com
adodd@messner.com
*Pro Hac Vice*

David J. Stein
Masuda, Funai, Eifert & Mitchell, Ltd.
203 N. LaSalle Street, Suite 2500
Chicago, Illinois 60601
P: (312) 245-7474
F: (312) 245-7467
dstein@masudafunai.com
***Attorneys for Defendant Chipotle***